## Joseph I. Sheridan, Administrator, v. The Prudential Insurance Company of America.

### Gen. No. 12,682.

1. INSURANCE—*clause providing for settlement by payment to person other than beneficiary, held valid.* A provision as follows:

"The company may make any payment provided for in this policy to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same, by reason of having incurred expense in any way on behalf of the insured, for his or her burial, or for any other purpose, and the production by the company of a receipt signed by any or either of said persons or other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such benefits have been paid to the person or persons entitled thereto, and that all claims under this policy have been satisfied,—"

is valid, but settlement made thereunder will be closely scrutinized by the courts.

Action of assumpsit. Appeal from the Superior Court of Cook
county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in
the Branch Appellate Court at the October term, 1905. Affirmed.
Opinion filed October 9, 1906.

**Statement by the Court.** The facts of this case are
substantially set forth in an agreed statement to
the effect that on the 27th of July, 1903, appellee
issued its policy of insurance on the life of George
De Quetterville, which policy provides that the amount
of the benefit shall be paid to the executors, admin-
istrators or assigns of the insured, unless settle-
ment shall be made as provided in article two under
the head of "Provisions;" that De Quetterville died
April 24, 1904; that all of the premiums due and
payable by the terms of the policy were paid by
said De Quetterville to the date of his death; that at
the time the policy was issued, the deceased was board-
ing at the house of one Kate Miller and so continued
until his death; that after such death said Kate Miller
presented written proofs of death to appellee, which
are introduced in evidence, claiming to be entitled to
the benefits under said policy, because she had incurred
expense on account of the burial of said deceased and
because at the time of death he was indebted to her
for board; that when presenting said proofs she sur-
rendered therewith the said policy of insurance and
premium receipt book pursuant to the rules of the ap-
pellee; that she also at that time showed the agent of
the appellee a receipt to her for the cost of the grave
of said deceased and a bill rendered to her by the
undertaker for the funeral expenses of said insured
amounting to $81; that said bill has not been paid and
that at that time it was said Kate Miller's intention to
pay the same out of the proceeds which she might
recover on said policy; that said undertaker is now
claiming the amount of said funeral expenses from the
administrator, appellant herein, and is making no
claim for same against said Kate Miller; that after

receiving said proofs of loss and claim from said Kate
Miller, the defendant company by its agents made
inquiry concerning the physical condition of said De
Quetterville for some time prior to his death and at
the time of the issuance of the said policy, and there-
after refused to pay the said policy, claiming that it
was not liable thereon because of the physical condi-
tion of the said De Quetterville at the time of its issu-
ance; and thereupon notified said Kate Miller that it
would not recognize said policy as binding upon it, but
that it would return to the said Kate Miller all pre-
miums which had been paid upon the said policy in
full settlement of all claims thereunder, and that after
considerable negotiating with said Kate Miller, she ac-
cepted said offer and said company paid to her and
she accepted $3.35, the amount of the premiums which
had been paid on the said policy, in full settlement of
all claims and demands under said policy; and she
thereupon executed her receipt for said $3.25 in which
it is stated that such "payment is in full for all claims
against said company under policy No. 17,997,290 is-
sued upon the life of George De Quetterville," and is
signed by said "Mrs. Kate Miller."

It is further agreed that at the time defendant of-
fered to return to said Kate Miller the $3.25 premiums
paid, the agent of the defendant company making said
offer stated to her that if she did not accept this prop-
osition she would never receive a cent.

The said insurance policy, which is for $170, was
introduced in evidence, showing that at the time. of
death, being more than six months after its date, one-
half of said sum, $85, was due, and containing a clause
providing for payment to the personal representatives
of deceased, unless settlement should be made in ac-
cordance with article second, under head of "Provis-
ions," which is as follows:

"2d.    FACILITY OF PAYMENT.    The company may
make any payment provided for in this policy to

any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same, by reason of having incurred expense in any way on behalf of the insured, for his or her burial, or for any other purpose, and the production by the company of a receipt signed by any or either of said persons, or other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such benefits have been paid to the person or persons entitled thereto, and that all claims under this policy have been satisfied.''

The cause was submitted to court without a jury, a jury having been by agreement waived. The Superior Court found the issues for the defendant.

John T. Mahon, for appellant.

Hoyne, O'Connor & Hoyne, for appellee.

Mr. Presiding Justice Freeman delivered the opinion of the court.

It is contended in behalf of appellee that said clause 2nd, quoted in the foregoing statement, fully authorized the selection of Kate Miller as the beneficiary under said policy and that the settlement with her is a complete defense to a suit by the administrator of the estate of the insured. The argument is that the parties to the policy had the right to enter into any contract not prohibited by law, and that this contract authorizing the selection of one of several parties to whom payment could be made, contravenes no law and it is not against public policy; that it is a matter with which the public is in no way concerned. In support of those contentions we are referred to the following cases: Brennan v. Prudential Ins. Co., 32 Atlantic Reporter (Pa.), 1042; Thomas v. Prudential Ins. Co., 148 Pa. St. 597; Thomas v. Prudential Ins. Co., 158 Ind. 461; Metropolitan Life Ins. Co. v. O'Farrell, 64 Kan. 278;

Brooks v. Met. L. Ins. Co., 70 N. J. L., 36; Metropolitan L. Ins. Co. v. Schaffer, 50 New Jersey Law, 72.

In the first of the above cited cases the action was brought by the administrator of the insured, upon policies which contained the clause above referred to found in the policy now in question. A settlement was made with a party selected by the insurance company under that clause, who was paid less than one-half the face of the policy. The Supreme Court of Pennsylvania affirmed the judgment of the trial court and approved the opinion of that court in reference to that clause, a portion of which is as follows:

"The clause which is thus brought under consideration, and which appears in all the policies of the defendant company, was passed upon by the Supreme Court in Thomas v. Insurance Co., 148 Pa. 594, and was sustained in its entirety. It was there held that in accordance with the express terms of the contract between the parties, the payment of the money by the company to the person appearing to it to be entitled to it, is a complete defense to a suit by the personal representative of the insured; that it is for the company to determine who is the person so entitled; and that it does not matter whether the person selected is in fact entitled to the money, it being sufficient that he or she appears to the company to be so. The principle of the decision virtually controls this case. The only difference between the two cases is that here the company paid but a part of the money and set up this to bar the whole. This, it is contended, does not fall within the strict terms of the policy, because it is only the payment of the amount named in the policy, and the production of a receipt for that full amount, that is to work satisfaction. To allow of anything less than this, it is argued, is to invite fraud. If the company may select their own party, and settle with him on their own terms, they can pick up anybody, and discharge themselves with a mere song. While this is not

without considerable force, yet the decision quoted, if followed to its legitimate end, is against. it. If the company may select the person whom they consider to be equitably entitled to the insurance money, with whom to settle, it cannot matter to anyone else upon what terms a settlement is reached. There may be subjects of controversy which call for adjustment and compromise, and to say that the company must pay the full amount of the insurance, or be debarred from taking advantage of this clause, is to interfere with the right of compromise, as well as their contract rights under the policy. Neither is it of any avail to inquire into the reasons which brought about a settlement, if the parties are competent to make it. Every compromise involves mutual concessions, and even if they seem to others to be unwarranted, there is no power in a third party to undo them. If, therefore, the company may determine to whom they will pay, they may also make their own terms with him, and if he sees fit to take fifty cents on the dollar, or any other sum, in settlement of the amount insured, it concerns no one but himself and the company are discharged.

It may be well to add, however, that in what is thus said we intend to speak only of a settlement made in good faith, in an honest effort to meet and discharge the obligations of the contract, and not in an attempted evasion of them. What would be the result in any case if settlement was shown to be of the latter character, we are not called upon to determine. But it may not be out of course to say, in response to the plaintiff's argument, that a settlement for a very much less sum than the face of the policy, arbitrarily made with a third party having no connection with the transaction, merely to escape a greater liability, would be charged with such bad faith, if not fraud, that it could not well stand. Nothing of that kind appears, however, in the present instance."

In Thomas v. Prudential Ins. Co., 148 Pa. 594-598,

referred to in the above citation, the apparent object of this kind of insurance contract is said to be to provide for necessary expenses at the last sickness or death of the insured; and the "manifest object" of the clause under consideration is said to be to "enable the company in case of the death of the assured to pay the amount of the policy without the expense of an administration. * * * The company paid this money to the person appearing to it to be equitably entitled thereto, and produced a receipt signed by her for the same. This was a complete defense under the very terms of the policy. It is for the company to judge who is the person to be equitably entitled to the money. This discretion is vested in it by the contract between the parties. The contract itself does not offend against any rule of law or public policy, and we can not hold that the administrator is entitled to recover without making a new contract for the parties."

Similar contracts are sustained by the courts of Indiana, Kansas and New Jersey in cases above cited, in some of which reference may be found to still other cases. In the opinion of a majority of the court these authorities must control the determination of the case before us, and it must be held that the payment to Kate Miller and the production of her receipt stating that the payment made to her is "in full for all claims against said company under" the policy in controversy, is to be regarded as a complete defense to the present suit by the administrator of the estate of the deceased.

It is contended in behalf of appellant that even if the clause referred to be held valid and binding, it must be strictly construed and that any and all settlements with a beneficiary appearing to the company to be entitled to payment, must be such and such only as are strictly within the meaning of the provision authorizing such payments. In the present case it appears from the agreed statement of facts that the company denied all liability under the policy, because, as was

claimed, the insured at the time he obtained it was not "in sound health," and hence the contract was by its terms invalid. The company refused, therefore, to recognize the policy as binding, but told Mrs. Miller that it would return to her all the premiums it had received from the deceased in full settlement of claims under it. There is no evidence in the record tending in any way to show that the insured was not in sound health at the time the policy issued. No presumption of that kind can be indulged in the absence of evidence. The material fact is, however, that the company repudiated the policy entirely and denied that it ever was an obligation binding upon it. The return of the premium was not a "payment provided for in this policy," and it is only in case of such payment to a relative or connection of the insured or to a person "appearing to said company to be equitably entitled to the same by reason of having incurred expense in any way on behalf of the insured for his or her burial or for any other purpose," that the receipt of the payee is by the clause in question made "conclusive evidence that such benefits have been paid to the person or persons entitled thereto, and that all claims under the policy have been satisfied." The writer is of the opinion that it is clear the alleged settlement with Mrs. Kate Miller was not a settlement under the policy itself, or such a settlement as article 2nd contemplates. It was outside of the provisions of the policy entirely, and emphasizes the repudiation of the policy in all its parts by the company. It is difficult to see how the provisions of a repudiated contract can be invoked to support a release of liability only available under such contract. A compromise of an amount due under a policy is different from a repudiation of it entirely and a refusal to pay anything under it. The act of the company appears to the writer to be merely a gift to a person of its own selection of the $3.25 it had received, not from her but

from the insured. It had about the same relation to the terms of the policy as if the company had thrown the money into the street for anyone to pick up who might find it. A repudiation of the entire contract the writer deems inconsistent with a claim to be entitled to escape liability under its terms. If the validity of clause 2 be conceded, the company should be held to strict compliance with such provision of its own making.

The writer is further of the opinion that where, as here, it clearly appears that there is a bill due to the undertaker for burial expenses of the insured as well as for board and other things to another, a compromise for less than the amount due under the policy with one only of those clearly appearing to the company and everyone else to be alike equitably entitled to be paid by reason of having incurred expense for the illness or burial of the insured, is not such a reasonable exercise of the option given the company under the policy as would alone suffice to relieve it from liability for the balance of the insurance money to others equally and unquestionably entitled equitably to share in the fund. The clause in question clearly contemplates payment not only "to the person," but to the "persons entitled thereto." The writer is of opinion that the clause referred to is itself of such a questionable nature, so susceptible of fraudulent abuse, that settlements made under it should be carefully scrutinized by the courts when cause appears.

Inasmuch, however, as the majority of the court regard the cases above referred to as controlling the case before us under the facts, the judgment of the Superior Court will be affirmed.

*Affirmed.*