## Fred Heubner, Appellee, v. Metropolitan Life Insurance Company, Appellant.

### Gen. No. 14,118.

1. INSURANCE—*when right of action upon policy lies in personal representatives.* A policy which names no specific beneficiary but which provides that the company may pay any relative who is "equitably entitled" etc. to the proceeds, cannot be recovered upon by the husband; the right of action on such a policy resides in the personal representative of the deceased insured.

2. INSURANCE—*what constitutes a warranty.* If a policy provides that it shall be "void if the insured before its date had been * * * attended by a physician for any serious disease or ailment or had before said date any pulmonary disease," a warranty is established and it is immaterial whether the insured knew at the date of such policy that he had such a disease.

Action commenced before justice of the peace. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed January 18, 1909.

**Statement by the Court.** The plaintiff, Fred Heubner, recovered a judgment for $179.50 against the defendant, the Metropolitan Life Insurance Company, April 20, 1907, in the Superior Court. The judgment was rendered on the verdict of a jury. The cause in the Superior Court was an appeal from a judgment of a justice of the peace of Cook county for the same amount, rendered September 3, 1902. It was tried *de novo* in the Superior Court, with the result noted.

The suit was on two policies of life insurance on the life of Hannah Heubner, one for the maximum sum of $160 and one for the maximum sum of $78.

Each policy, however, contained the provision that one-fourth only of the maximum sum should become due if death occurred within six months from its date, one-half only if it occurred after six months, and within one year, and the full amount only if death

occurred after one year.   The first policy was dated February 11, 1901, and the second December 16, 1901. Mrs. Heubner died May 12, 1902, so that the maximum amount of the first policy and one-fourth of the second, aggregating $179.50, was claimed.

The policies contain on their face a promise "to pay the amount stipulated upon receipt of proofs of the death of the insured made," etc., without naming the payee.   This clause follows:

"The Company may pay the amount due under this policy to any relative by blood or connection by marriage of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial, and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied."

The policies on their face also contain the statement that the agreement to pay is "subject to the conditions below and on the reverse hereof, each of which is hereby made a part of this contract and contracted by the assured to be part hereof as fully as if herein recited."

On the reverse or back of each policy is printed a formula of which parts are as follows:

"This policy is issued and accepted upon the following conditions, all of which are made a part of this contract:

CONDITIONS.

FIRST: This policy is issued upon an application which omits the warranty usually contained in applications and contains the entire agreement between the Company and the insured and the holder and owner hereof.   *   *   *   *   *   *

SECOND: Unless otherwise stated in the blank space below in a waiver signed by the Secretary, this Policy is void if the insured before its date has been rejected for insurance by this or any other Company, or has been attended by a physician for any serious disease

or complaint, or has had before said date any pulmonary disease or chronic bronchitis or cancer or disease of the heart, liver or kidneys, or if before said date any parent or brother or sister of insured has died of any pulmonary disease, or bronchitis or any scrofulous disease."

Neither upon the face or back of the first policy is there any naming of a beneficiary, but on the face of the second under the heading:

"NAME OF BENEFICIARY AND RELATIONSHIP TO
THE INSURED."

appears:        "Fred Heubner, Husband."

It was admitted, however, that the application for the first policy mentioned the plaintiff as the person whom the appellant desired to make the beneficiary.

When the first policy was offered in evidence the defendant's counsel objected on the ground that it was immaterial. The objection was overruled and an exception taken. It was then that counsel for the plaintiff interjected the statement that it was "admitted by counsel for defendant that in the application for said policy the plaintiff is named as beneficiary."

The evidence introduced by the plaintiff consisted of the policies and proper proofs of death. The proofs showed that death resulted from pulmonary tuberculosis or consumption, as it is commonly called. The claimant certified that the duration of the last sickness had been about a year—the attendant physician that it had lasted 1½ years. The defendant then introduced the testimony of two other physicians who swore that in June, 1900, almost two years before the death and more than seven months before the date of the first policy, they had been called to treat Mrs. Heubner professionally for a profuse hemorrhage of the lungs, and found that she had pulmonary tuberculosis. One of the physicians, Dr. Gowen, testified that he informed her that "her lungs were affected," and specifically informed her husband, the plaintiff, and his mother, that she had "phthisis" or consumption.

He also told them that in his opinion she would not get well. There was no substantial contradiction or doubt about the character of the disease or that she suffered with it at the time the policies were issued, but the plaintiff did testify that he was not informed by Dr. Gowen that his wife had lung trouble. He was told by the doctor, he says, that she had a bad cold. Mrs. Heubner, the plaintiff's mother, also denied that Dr. Gowen had informed her that her daughter-in-law had the consumption.

A motion for a peremptory instruction was first denied by the court, and afterward the following instructions:

"First: The court instructs the jury that if they believe from the evidence that Hannah Heubner, the insured, had prior to Feb. 11, 1902, any pulmonary disease, then in such case the jury should find the issues for the defendant.

Second: The court instructs the jury that if they believe from the evidence that Hannah Heubner, the insured, was attended by a physician for a serious disease or complaint prior to Feb. 11, 1901, then in such case the jury should find the issues for the defendant.

Third: The court instructs the jury that if they believe from the evidence that the insured, Hannah Heubner, was not in sound health on Feb. 11, 1901, then in such case there can be no recovery on the policy of insurance introduced in evidence herein and bearing that date.

Fourth: The court instructs the jury that if they believe from the evidence that the insured, Hannah Heubner, was not in sound health on December 16, 1906, then in such case there can be no recovery on the policy of insurance introduced in evidence herein and bearing that date."

Marking all these tendered instructions "Refused," the court gave to the jury, of its own motion, the following instruction:

"The court instructs the jury that if they believe from the evidence that Hannah Heubner, the insured,

had prior to Feb. 11, 1901, any pulmonary disease, then, in such case, the jury should find the issues for the defendant; of if the jury believe from the evidence that Hannah Heubner, the insured, was attended by a physician for any serious disease or complaint prior to February 11, 1901, then in such case there can be no recovery on the policy of insurance introduced in evidence herein and bearing that date; or if the jury believe from the evidence that the insured, Hannah Heubner, was not in sound health on December 16, 1901, then in such case there can be no recovery on the policy of insurance introduced in evidence herein, and bearing that date, *unless you further believe from all the evidence that the deceased, Hannah Heubner, acted in good faith and honestly believed she was stating nothing but the truth when the insurance policies were issued by the defendant, and if you further believe, from the evidence, that if the said Hannah Heubner was suffering from any illness as mentioned in the contract, but if the said Hannah Heubner was not aware of her condition and had no notice that she was suffering with any such disease, and acted in entire good faith and honestly believed that she had stated the truth as to her physical condition, then you shall find the issues for the plaintiff."*

After the verdict a motion for a new trial was made by the defendant and overruled by the court. The assignment of errors in this court covers the denial of this motion, and asserts that the instruction given was erroneous and those refused accurate, and that the verdict and judgment were against the law and the evidence.

HOYNE, O'CONNOR & IRWIN, for appellant.

EDWARD R. LITZINGER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The complaint made by defendant of the judgment appealed from in this cause is two-fold:

First: It is claimed that as to the first policy sued on, no right whatever was shown in the plaintiff, and that therefore it should have been excluded from evidence as immaterial. Of course also, if the plaintiff had no right to recover on it because of a want of connection with it or title in it, the instruction given by the trial judge *proprio motu* was incorrect, for that instruction stated contingencies on which he was entitled to a verdict.

The other contention of the defendant is that the evidence showed that the policies had never become effective. By their terms (that is by the terms which are a part of the conditions endorsed on them, which the body or face of the policy above the signature provides are made part of the contract as fully as though on said face recited) they were to be "void if the insured, before its date, had been  *  *  *  attended by a physician for any serious disease or complaint, or had before said date any pulmonary disease," and the evidence showed both these conditions. The instruction of the trial court was therefore erroneous.

We are constrained to hold both these contentions of the defendant well taken and to reverse this judgment.

The answer of the plaintiff to the first is, that it is conceded that the application for the first policy named the plaintiff as beneficiary, and that no objection having been made in the court below to the plaintiff's right to sue on the policy, the defendant ought not to be allowed in this court to raise this objection to the judgment.

The plaintiff's claim in this regard is broader, we think, than the record warrants. The objection made to the offer of the policy, that it was immaterial to the issues in the case, could hardly have referred to anything else than the claim that it was not a contract in favor of the plaintiff. At all events, we can see no other ground for it, and the argument that plaintiff's counsel's own statement, although apparently ac-

quiesced in by defendant, that ''in the application for said policy the plaintiff is named as beneficiary,'' is not tantamount, as argued, to ''an express and open admission that appellee was the beneficiary under the policy * * * and as such had the right to sue.''

It is quite conceivable that in many cases the relation between application and policy might be such that such a naming of a beneficiary in the application would be read into the policy and be sufficient to show a title in the person named to sue on said policy; but we have here no application in evidence—merely the statement that in ''the application'' for the policy (no further described) the plaintiff is named as beneficiary. Turning to the policy we find the only allusion to the application, on either face or back of the same, to be this, among the conditions: ''This policy is issued upon an application which omits the warranty usually contained in applications and contains the entire agreement between the Company and the insured and the holder and owner thereof.'' This appears to imply, at the very least, a repudiation of the application as affecting the policy. At all events, it emphatically declares the whole contract must be found between the four corners of the paper constituting the policy.

Within those four corners there is no right given to the plaintiff to recover on the policy in any event, and no protection secured to the Company in paying him unless he proves that he is ''equitably entitled'' to the proceeds, ''by reason of having incurred expense on behalf of the insured or for her burial.'' The right to sue on such a contract does not reside in the husband as husband. It belongs only to the personal representative of the deceased. Massachusetts M. L. Ins. Co. v. Robinson, 98 Ill. 324; U. S. Life Ins. Co. v. Ludwig, 103 Ill. 305; Bailey v. N. Eng. Mut. Life Ins. Co., 114 Mass. 177.

The answer of the plaintiff to the second contention of the defendant is that the doctrine of the court's instruction is correct—that the question is merely

whether the deceased committed fraud by a misrepresentation of her condition, made knowingly. If "she honestly believed she was stating nothing but the truth when the insurance policies were issued by the defendant," then the plaintiff could recover, the court ruled. We are unable to agree with this. There is no application in evidence in this case, nor evidence of what the deceased claimed. It would be a serious question whether we could hold that the verdict was not against the clear weight of the evidence if the theory of the instruction of the court were correct. The certificates and testimony of the doctors make it hard to believe that in February, 1901, and in December, 1901, Mrs. Heubner did not know that she had been previously "attended for a serious disease," or that in good faith she could have said that she had no pulmonary disease. But there is no evidence that she so represented. The contract merely declares itself non-effective and void in certain contingencies, and these contingencies, the evidence strongly tended to show—indeed did show without serious question—existed.

Accepting the policy with these conditions was equivalent to a warranty that the conditions mentioned did not exist when the policy was issued. Stout v. City F. Ins. Co., 12 Iowa, 371.

If the deceased *warranted* that she had not been attended by a physician for a serious complaint, nor had suffered from a pulmonary disease, then her good faith in making the statement which constituted the warranty was of no importance. The only test of the effect was its accuracy. In this view the instruction of the court was erroneous.

The Supreme Court has in Spence v. The Central Accident Insurance Company, 236 Ill. 444, gone farther than ever before in declining to hold representations, warranties, if it could be avoided. In that case, however, the court thus defines a warranty, quoting approvingly from Mutual Benefit Life Ins. Co. v. Rob-

ertson, 59 Ill. 123: "*A warranty is in the nature of a condition precedent.* It must appear on the face of policy, or, if on another part of it or on a paper physically attached, it must appear that the statements were intended to form a part of the policy, or if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it."

There can be no doubt of the intention of the parties in this case to make "the conditions precedent" in the policy a part of it. They are manifestly so.

The opinion in Spence v. Insurance Co. also says of the effect of a "warranty," which as noted it says is "in the nature of a condition precedent": "A warranty enters into and is a part of the contract and must be literally true in order to entitle a party to recover upon a policy of insurance."

The plaintiff showed no right to sue on the first policy, and the instruction of the trial judge was erroneous. Therefore the judgment is reversed and the cause remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*