## James F. Bishop, Administrator, Appellee, v. The Prudential Insurance Company of America, Appellant.

### Gen No. 24,984.

1. DIVORCE, § 167*—*what is effect of.* A divorced wife is not a relative by blood nor a connection by marriage of her former husband by reason of their previous marital relation, but upon divorce they become as strangers to each other.

2. INSURANCE, § 502*—*how "facility of payment" clause in industrial policy construed.* The "facility of payment" clause contained in industrial insurance policies which authorizes the insurer to make any payment provided for in the policy to any blood relation, connection by marriage or any other person appearing to the insurer to be equitably entitled thereto by reason of having incurred expense on behalf of the insured for any purpose is intended to remove the chance of litigation between claimants and to protect the insurer in making a prompt payment without the expense of administrative proceedings.

3. INSURANCE, § 502*—*validity and construction of "facility of payment" clause.* The "facility of payment clause" in industrial policies is not against public policy and should be liberally construed.

4. INSURANCE, § 502*—*option as to payments under "facility of payment" clause.* Where an industrial insurance policy containing a "facility of payment" clause is payable to the executor or administrator of the insured, payment to one of the classes mentioned in such clause is optional with the insurer, and one of such class cannot compel the insurer to make the payment to him.

5. INSURANCE, § ·505*—*action where insurer fails to exercise option under facility of payment clause.* Where an insurer fails to exercise the option as to the person to whom it will pay, given it by the "facility of payment" clause in an industrial insurance policy payable to the executor or administrator, recovery may be had at the suit of the executor or administrator.

6. INSURANCE, § 502*—*effect of payment by insurer under "facility of payment"* clause. Where no specific beneficiary is designated by an industrial insurance policy containing a "facility of payment" clause and the insurer has exercised its option and has in good faith made payment to a person in one of the classes enu-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

merated in the facility clause, it is thereby discharged from further liability on the policy.

7. INSURANCE, § 502*—*effect of payment to divorced wife of insured under "facility of payment" clause.* An insurance company which pays the value of an industrial insurance policy containing a "facility of payment" clause and payable to the executors or administrators of the insured, to the divorced wife of the insured, is thereby relieved from liability on the policy at the suit of the administrator, where it appears that for nearly 3 years before the death of the insured the wife had paid the premiums from her own earnings, that she had prevented the insured from destroying the policy and after her separation and subsequent divorce from her husband she contributed from her earnings to the support of two of the children of the marriage.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed with finding of facts. Opinion filed March 9, 1920.

HOYNE, O'CONNOR & IRWIN, for appellant.

FRANCIS H. MCKEEVER, for appellee; CHARLES GOODMAN and ARTHUR M. KRACKE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment of the municipal court of Chicago for $498.44 against the defendant insurance company. The case was tried before the court without a jury.

James F. Bishop, public administrator of Cook county, was appointed administrator of the estate of Chester A. Anderson, deceased, by the probate court of Cook county on November 4, 1916. The letters of administration were issued at the instance of certain creditors of the deceased, who had claims against his estate for medical and hospital services and for funeral expenses, aggregating about $260. The present action was commenced by said administrator on De-

*See Illinois Notes Digest, Vols, XI to XV, and·Cumulative Quarterly, same topic and section number.

Vol. CCXVII 8,

cember 14, 1916, on a policy of insurance, commonly known as an industrial policy, issued by the company upon the life of said Anderson. According to the inventory filed by the administrator in said probate court, the only asset of the estate is the claim against the company here in question. The policy is dated August 14, 1911, and provides for the payment of a weekly premium of 29 cents. No beneficiary is named but it is provided therein that the benefit of $500 shall be paid "unto the executors or administrators of the insured, *unless* settlement shall be made as provided in Article 2d, * * * immediately upon receipt of due proof of the death of the insured during the continuance of this Policy." Article 2d is what is commonly known in industrial policies as the "facility of payment clause," and is as follows:

"The company may make any payment provided for in this Policy to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, for his or her burial, or, if the insured be more than fifteen years of age at the date of this policy, for any other purpose, and the production by the company of a receipt signed by any or either of said persons or of other sufficient proof of such payment to any or either of them shall be conclusive evidence that such benefits have been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

Among the errors assigned and here argued is that the trial court erred in entering judgment on the finding against the company.

At the time the policy was issued in August, 1911, the insured, 27 years of age, and Anna J. Anderson, his wife, were living together as husband and wife. He was then working for an express company as bookkeeper receiving a salary of $45 per month. She also worked and earned small sums. Until he lost his posi-

tion with the express company, early in the year 1914, the premiums on the policy were paid, sometimes by money earned by him and sometimes by money earned by her. In 1914, they had three children (a boy about 9 years of age, and two girls, about 4 and 2 years of age, respectively) and had kept in force another policy, a "Children's policy" for $1,000, in the same company. In the fall of 1914 they quarreled. She testified: "He took the $1,000 policy and tore it up. I grabbed this one,  *  *  *  and said he should not have this, but leave something for me and the children. He said: 'You shall not have a cent.'  *  *  *  I took the policy and hid it." She continued to pay the premiums. In April, 1915, the husband and wife separated. She further testified: "He had not been working for a year before we separated.  *  *  *  During that year he contributed nothing toward the support of the family, except a little once in a while, a dollar or two." In the summer of 1915, she was obliged to go to the county hospital. When she came out she was informed by an agent of the company that the policy had lapsed for nonpayment of premiums and that it could not be revived without her husband's signature. She went to her husband and he refused to sign the revival application. She again saw the agent and subsequently the company authorized him to revive the policy on payment of all arrears in premiums. She paid all arrears, and from that time until her husband's death she paid all the premiums. On March 1, 1916, she obtained a divorce. Subsequently, on August 12, 1916, Mr. Anderson died at Montevideo, Minnesota. At that time the eldest child, the boy, was in an orphan's home and had been since the preceding February, the elder girl was living with an aunt and had been for about 2 years, and the younger girl was living and being supported, as she had always been, by Mrs. Anderson. Prior to Mr. Anderson's death, Mrs. Anderson had

paid a portion of the boy's support in said orphan's home, and after said death the boy was removed from said home and taken to his father's relatives in Montevideo. On August 24, 1916, Mrs. Anderson filed a written claim for the benefit payable under the policy and made due proof of the death of Mr. Anderson. On August 28 a brother of the deceased notified the company that there were several unpaid claims against the estate of the deceased for expenses in the last illness and for funeral expenses, and, in effect, made the claim that the money due on the policy should be paid in liquidation of those claims and should not be paid to the divorced wife. The company made a careful investigation, and, on October 30, 1916, reached the decision that it would pay the benefit due under the policy to Mrs. Anderson, and notified said brother that said decision was in accordance with the "facility of payment clause in the policy." The company subsequently delivered to Mrs. Anderson its check for $498.44, dated October 30, 1916, and she received said amount about November 20, 1916. At the time the company decided to pay the benefit to Mrs. Anderson it was in possession of the substance of the facts as above outlined. Mrs. Anderson, after she received the amount of said check, paid the sum of $100 to the said aunt, with whom said elder daughter had been living for about 2 years, for the support of the latter. On January 2, 1917, Mrs. Anderson was married to a man named Fairchild.

By the "facility of payment clause" of the policy the company is authorized to make any payment provided for in the policy "to any relative by blood or connection by marriage of the insured, or to *any other* person *appearing to said company* to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, for his or her burial, or * * * *for any other purpose"*; and it is further provided in said clause that the production by the

company of "sufficient proof of such payment" to any or either of said persons "shall be *conclusive* evidence that such benefits have been paid to the person or persons entitled thereto," and that all claims under the policy have been "fully satisfied." The evidence clearly shows that the company, acting in good faith, paid an amount, practically equal to the face of the policy, to Mrs. Anna J. Anderson; that she formerly had been the wife of the insured but that about 5 months before his death she had obtained a divorce from him; but that at the time of his death she was not a relative of his by blood, neither was she a "connection by marriage," for the reason that after the divorce they became as strangers to each other. (2 Nelson on Div. & Sep. sec. 981; *Zilley v. Dunwiddie,* 98 Wis. 428, 433; *In re Ensign's Estate,* 103 N. Y. 284, 287; *Plaster v. Plaster,* 47 Ill. 290, 294.)

The question presented for decision is whether, under the provisions of the policy and under the facts disclosed, the company had the right to pay the insurance benefit to Mrs. Anderson. If it did, it should not by this judgment be compelled to pay the amount a second time.

From the reading of a number of adjudicated cases we glean the following: That the so-called "industrial" policies of life insurance, containing what is known as a "facility of payment" clause, are usually issued for small amounts, sometimes as small as $25, in consideration of the payment of small weekly premiums, and upon the lives of persons of limited means; that prompt payment of the benefit is usually provided for after the receipt of satisfactory proofs of the death by the insurer; and that the purpose of such a clause is the protection of the insurer in making a prompt payment without the expense of administrative proceedings. (*Thomas v. Prudential Ins. Co.,* 148 Pa. St. 594, 598; *Wokal v. Belsky,* 53 N. Y. App. Div. 167, 65 N. Y. Supp. 815, 817; *American Trust Co. v. Prudential*

118    APPELLATE COURTS OF ILLINOIS.

Bishop v. The Prudential Ins. Co. of America, 217 Ill. App. 112.

*Ins. Co.*, 16 App. Cas. [D. C.] 318, 321) ; and another purpose is "to remove the chance of litigation between claimants." (*Bradley v. Prudential Ins. Co.*, 187 Mass. 226 229.) That such a clause is not against public policy (*Bradley v. Prudential Ins. Co., supra; Metropolitan Life Ins. Co. v. Schaffer*, 50 N. J. L. 72, 75), and should be liberally construed. (*Brooks v. Metropolitan Life Ins. Co.*, 70 N. J. L. 36, 40.) That, where the policy is payable to the executor or administrator of the insured, the payment to a person in one of the different classes mentioned in said clause is optional with the insurer, and a person of a particular class, to whom the insurer might have elected to make payment but did not, cannot compel the insurer to pay the benefit to him (*Griffith v. Prudential Ins. Co.*, 172 Ill. App. 304, 307; *Heubner v. Metropolitan Life Ins. Co.*, 146 Ill. App. 282, 287; *Ferretti v. Prudential Ins. Co.*, 49 N. Y. Misc. 489, 97 N. Y. Supp. 1007) ; and, where the insurer fails to exercise its option and has paid no part of the benefit, a recovery may be had at the suit of the executor or administrator. (*Wokal v. Belsky, supra.*) That, where no specific beneficiary is designated by the policy, and the insurer has exercised its option and has, *in good faith,* made payment to one of the persons of one of the several classes, the insurer is thereby discharged from any further liability on the policy. (*Thomas v. Prudential Ins. Co., supra; Bradley v. Prudential Ins. Co., supra; Thompson v. Prudential Ins. Co.*, 119 N. Y. App. Div. 666, 104 N. Y. Supp. 257, 259; *American Trust Co. v. Prudential Ins. Co., supra; Metropolitan Life Ins. Co. v. O'Farrell*, 64 Kan. 278, 281; *Chance v. Metropolitan Life Ins. Co.*, 147 Ga. 396, 398; *Brennan v. Prudential Ins. Co.*, 170 Pa. St. 488, 494.) And that, under peculiar circumstances, even a partial payment of the amount of the policy, made in good faith, will discharge the insurer from further liability. (*Brennan v. Pru-*

*dential Ins. Co., supra; Sheridan v. Prudential Ins. Co.,* 128 Ill. App. 519.)

In the leading case of *Thomas v. Prudential Ins. Co.,* 148 Pa. St. 594, above cited, Thomas, as administrator of the estate of Griffith Pugh, deceased, sued the insurance company to recover the benefit of $60 on a policy of insurance, payable to the executor or administrator of Pugh, and containing a "facility of payment" clause very similar to the clause in the policy here in question. The amount of the benefit was paid to Laura Evans after Pugh's death by the company, under and by virtue of the provisions of said clause. She was not related to Pugh. The administrator obtained a verdict and judgment in the trial court. In reversing the judgment the Supreme Court said (p. 598): "We are unable to see how the administrator can recover from the company the money which it paid in strict compliance with the contract between it and the assured. * * * The manifest object of the second schedule of the policy * * * was to enable the company, in case of the death of the assured, to pay the amount of the policy without the expense of an administration. The sum of $60, if it could be paid only by raising up a legal administration, would be of little use to any one, as nearly the whole of it would be absorbed in fees and expenses. Aside from this, the company has a right to protect itself, with the consent of the assured, against trifling but expensive litigation, which might constantly occur over disputes as to the parties entitled. * * * The company paid this money to the person appearing to it to be equitably entitled thereto, and produced a receipt signed by her for the same. This was a complete defense, under the very terms of the policy. It is for the company to judge who is the person to be equitably entitled to the money. This discretion is vested in it by the contract between the parties. The contract itself does not offend against any rule of law or public policy, and we

cannot hold that the administrator is entitled to recover without making a new contract for the parties. It appears from the evidence that the assured boarded with Laura Evans up to the time of his death; that he owed her $20 for board, and that she advanced $8 for funeral expenses. This may, or may not, be the reason why the defendant company regarded her as equitably entitled to the insurance money. It was sufficient for the purposes of this case that she appeared to said company to be so entitled." This Pennsylvania case was quoted from with approval by this branch of this Appellate Court in the case of *Sheridan v. Prudential Ins. Co., supra.*

In the above cited case of *Bradley v. Prudential Ins. Co.*, 187 Mass. 226, Bradley, administrator of the estate of Mary Sawyer, deceased, brought suit to recover the benefit of $500 upon a policy almost identical with the provisions of the policy here in question. The cause was tried in the lower court upon an agreed state of facts and was there decided in favor of the company and the administrator appealed. It appears from the agreed facts that the policy was issued upon the life of Mary Sawyer; that she was then the wife of Henry Sawyer and continued so to be until her death; that after taking out the policy she and her husband separated; that she and one Murphy went through the form of marriage and lived together as husband and wife until her death; that, after her separation from Henry Sawyer, the weekly premiums were paid partly by her and partly by Murphy with his own money; that after her death he paid her funeral expenses amounting to $158, delivered to the company the usual proofs of death stating that he was the husband of the deceased, and the company subsequently paid to him in good faith the full amount of the policy under and by virtue of the "facility of payment" clause, it believing that he was the person who best fulfilled the requirements of said clause inasmuch as he had paid a part of the

premiums and the expense of the burial of his alleged wife; that Murphy gave the company a receipt reciting that said payment was in full for all claims against the company under the policy; and that after said payment the rightful husband of the insured demanded payment from the company of the amount of the policy, and upon refusal plaintiff, after being appointed administrator, brought the suit. The Supreme Court held that the payment to Murphy was a complete bar to plaintiff's claim, saying (p. 228): "Under the circumstances * * * there is no promise to pay to the plaintiff, and the payment stipulated for has been made in accordance with the terms of the policy. The plaintiff contends that Murphy was not equitably entitled to the payment. But the stipulation is not as to payment to one in fact equitably entitled to payment, but is as to payment to any person appearing to the company to be equitably entitled to the same. Such stipulations are common in industrial policies, the amounts of which always are small; and one purpose of them is to enable the amount of the policy to be paid very speedily after the death of the insured, without the delay or expense of taking out administration. * * * In effect, the article gives the company power, acting in good faith, to discharge its debt and perform its contract by making payment to any person who is a relative by blood or marriage of the insured, or who has incurred expense for the insured."

In the above cited case of *Chance v. Metropolitan Life Ins. Co.*, 147 Ga. 396, plaintiff was the administrator of the estate of Charley Ford, deceased. During the lifetime of Ford the company had issued a policy insuring his life. The policy provided for the payment of a benefit of $240, and there was contained therein a "facility of payment" clause similar to the one here in question. For 10 months prior to the death of the insured, Kate Ford paid the premiums. The company decided to pay the benefit to her and made

out a check payable to her order for the sum named, but before it was delivered several other claimants of the fund served the company with summons of garnishment. These claims were based on the contention that the amount of the policy was payable to the heirs at law of the insured. The company filed a petition of interpleader, and upon the hearing the lower court held that the company had the right to decide who was equitably entitled to receive the amount of the policy, and had properly exercised that right in favor of Kate Ford. On appeal by the administrator the Supreme Court affirmed the judgment, saying (p. 398): "Under the contract of insurance, the insurance company could exercise its discretion in making payment, on the death of the insured, to any person appearing to the company to be equitably entitled to it by reason of having incurred expense on behalf of the insured. It appears from the record that the payee of the check, Kate Ford, did incur expense by paying the premiums on the policy, and the insurance company was therefore in the proper exercise of its discretion in making a check payable to her for the amount of the policy."

Our conclusion is that, under the facts disclosed, and under the law, the municipal court erred in entering the judgment in this case against the company. It seems clear to us that the payment of substantially the face of the policy to Mrs. Anderson was made by the company in good faith, and that by the terms of the policy itself that act is conclusive evidence that all claims under the policy have been fully satisfied, and that the company should not be compelled to pay said amount a second time at the instance of the administrator in the present action. It seems equally clear that, at the time the payment was made, not only did it appear to the company that Mrs. Anderson was equitably entitled to the same by reason of having incurred expense on behalf of the insured, but also that she was in fact so equitably entitled to the fund. For nearly

3 years after the policy was taken out and before Mrs. Anderson and her husband quarreled she paid some of the premiums out of her own earnings. This was an expense incurred on behalf of the insured. In the fall of 1914, about 2 years before the death of the insured, she prevented the destruction of the policy by him and thereafter until his death paid all of the premiums with her own earnings and kept the policy alive, for the reason she wanted something for the children and herself. Had it not been for her payment of these premiums the policy would have been forfeited. After her separation from her husband in 1915, she contributed towards the support of the eldest child in an orphans' home and she always supported the youngest child with her own earnings. While it was perhaps her duty to support the children, so far as she was able, as well as it was the father's duty, the primary duty was upon him. (*Zilley v. Dunwiddie,* 98 Wis. 428, 433; *Plaster v. Plaster,* 47 Ill. 290, 291.) And we think that in so contributing to the support of the children she incurred further expense on behalf of the insured.

For the reasons indicated the judgment of the municipal court is reversed.

*Reversed with finding of facts.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.

Finding of facts. We find as ultimate facts that Anna J. Anderson, during the lifetime of the insured, Chester A. Anderson, incurred expense on his behalf in the paying of premiums due on the policy in question, and in the contributing of moneys to the support of the children of said Anna J. and Chester A. Anderson; and that the defendant insurance company paid substantially the amount of said policy to Mrs. Anna J. Anderson in good faith.